ATLANTIC LOAN COMPANY *v.* PETERSON.

*Lovick G. Fortson,* for plaintiff in error.

*T. B. Clarkson,* contra.

BELL, Justice.   On October 21, 1930, Lyman S. Peterson obtained a loan of about $700 from Atlantic Loan Company, of Fulton County, conveying as security therefor a tract of land situated in DeKalb County.   The security deed referred to the loan company as parties of the second part, and provided that in case of default "said parties of the second part, or assigns, may enter upon said premises and collect the rents and profits thereof, and may sell the said property at auction at the usual place of conducting sales at the court-house in Fulton County, Georgia, to the highest bidder for cash, first giving notice of the time and place of sale and terms of sale, by advertisement once a week for four weeks, without regard to the number of days, in a newspaper published in said county, all other notices being hereby waived by said party of the first part."   By an act approved March 28, 1935, the legislature undertook to regulate the manner of exercising powers of sale contained in security deeds, by providing, among other things, that the sale shall be advertised in the same manner as sheriffs' sales, and shall be conducted in the county in which the land or a part thereof is located.   The act also purports to require confirmation of sales under powers, without legal process, and to limit the right to deficiency judgments in such cases.   The complete act, including caption, is as follows:

"An act to provide for confirmation of sales under foreclosure proceedings on real estate, to limit and abate deficiency judgments in suits and foreclosure proceedings on debts secured by mortgage, security deeds, and other lien contracts on real estate, to provide for advertisement of foreclosure sales; and for other purposes.

"Section 1.   Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act when any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages, or other lien contracts, and at such sale said real

estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within thirty days after such sale, report the sale to the judge of the superior court of the county in which the land lies, for confirmation and approval, and obtain an order of confirmation and approval thereon. The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale. The court shall direct notice of the hearing to be given the debtor at least five days prior thereto, and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may for good cause shown order a resale of the property.

"Section 2. Be it further enacted, that no sale of real estate under powers contained in mortgages, debt, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which such real estate, or a part thereof, is located.

"Section 3. That all laws and parts of laws in conflict with this law be and the same are hereby repealed." Ga. L. 1935, p. 381.

In April, 1935, Peterson filed a suit against Atlantic Loan Company, alleging that the defendant had placed an advertisement in the Northside Press, a newspaper published in Fulton County, Georgia, giving notice that because of a default by the plaintiff the loan company would, on April 29, 1935, after four weeks advertisement, sell the property in accordance with the terms of the security deed. The plaintiff in his petition invoked the provisions of section 2 of the act of March 28, 1935, and sought an injunction to prevent the sale as advertised. The plaintiff admitted in his petition that the defendant was proceeding in conformity to the power of sale contained in the security deed, but insisted that the subsequent act of the legislature was controlling, and that the defendant was violating this statute in the following particulars: (1) the sale is being advertised in a newspaper different from that in which sales by sheriffs are advertised; (2) the sale will not be had on the same day as sheriffs' sales; and (3) the sale will be

conducted in Fulton County, whereas the land is situated in DeKalb County. The defendant filed an answer in which it admitted the plaintiff's allegations of fact, but further pleaded that the act of March 28, 1935, is unconstitutional and void as applied to the existing contract, for the following reasons: (1) the act would impair the obligation of the contract, in violation of the State and Federal constitutions: Code of 1933, §§ 1-134, 2-302; (2) it attempts to confer upon the court non-judicial powers; and (3) it denies the right of trial by jury, as conferred by the State and Federal constitutions. The case was tried upon an agreed statement of facts, without a jury. The result was a decree in favor of the plaintiff, enjoining the defendant permanently from exercising the power of sale in the manner attempted. To this judgment the defendant excepted. The judge stated in his order that he entertained some doubt as to the constitutionality of the act in question, especially its applicability to existing contracts.

As indicated in the preceding statement, the defendant challenged the act of March 28, 1935, on several grounds. Since we are of the opinion that the whole act is invalid as applied to the prior security deed, for the reason that its enforcement would unconstitutionally impair the obligations of such contract, we do not deem it necessary to consider the other questions raised. While under this record the defendant was directly concerned with section 2 only, it did not attack this section in particular, but in each ground of objection assailed the statute as a whole. In this state of the record, it is necessary to examine the act in its entirety, because if any part of it may be constitutionally applied to the contract in question, the attack embracing a mass objective only will necessarily fail, and the judgment against the plea should be affirmed. Theoretically the defendant's position would have been safer if a separate objection had been made to section 2; and at the same time, in the view which we take of the case, a decision of the single question would have been sufficient under the present record. But after a consideration of the act as a whole, we are convinced that none of it may be constitutionally enforced as to contracts in existence at the time of its passage, and thus that the loan company should have prevailed in the court below.

■ We will first discuss the provisions of section 2, which, though remedial in form, would substantially alter a remedy given

by express agreement in the security deed. In this case we have the promise to pay the debt as the primary obligation, and the power of sale as a remedy,—not a legal but a contractual remedy. Cf. *Vizard* v. *Moody,* 119 *Ga.* 918 (3) (47 S. E. 348). The remedies existing by law at the time of the execution of a contract may be modified by the legislature without impairing the obligation, provided an efficient remedy is left for its enforcement. Tennessee v. Sneed, 96 U. S. 69 (24 L. ed. 610). The rule is different, however, as to a remedy which the parties have expressly made a part of the contract, because in such case the remedy is integrated as a part of the obligation, and a subsequent statute which affects the remedy impairs the obligation and is unconstitutional. See 6 R. C. L. 351, § 356; 12 C. J. 1070, § 728. Even a remedial statute may impair the obligation of a contract, and in such event the act is unconstitutional. Bronson v. Kinsie, 42 U. S. 311, 322 (11 L. ed. 143, 147) ; *West* v. *Sansom,* 44 *Ga.* 295 (2). "This always happens where the parties make legal remedies a subject of their contract and subsequent legislation conflicts with what they have expressed in their agreement. If they do not prescribe the rule of remedy in their contract, the lawmaking power is free; but if they do, they become a law to themselves, and the legislature must let them alone. . . If the thing provided for by the legislature be within their general competence, and yet be the very thing expressly excluded by a particular contract, it is plain that, as to the parties to that contract, the law is unconstitutional and void, because it impairs the obligation of their contract." Billmeyer *v.* Evans, 40 Pa. 327. This statement was quoted with approval in the well-considered decision in International Building & Loan Asso. *v.* Hardy, 86 Tex. 610 (26 S. W. 497, 24 L. R. A. 284, 40 Am. St. R. 870), which involved a remedial stipulation in a trust deed,. and in which it was held that a subsequent statute which purported to change the remedy thus provided by the contract was invalid under the contract clauses of the State and Federal constitutions. The Hardy case was cited in Wilson v. Standefer, 184 U. S. 399 (22 Sup. Ct. 384, 46 L. ed. 612), where it was said "that a specific remedy, provided by the contract itself, can not be changed by legislation, because it constitutes a part of the contract." See also, in this connection, Chapin *v.* Frank (Tex. Civ. App.), 236 S. W. 1006.

As to section 2, we will limit the present decision to so much of the act as prescribes the county in which the medium of the advertisement should be located and in which the sale should be conducted. The land was situated in DeKalb County, but the location of this property and other conditions might have been such that the parties deemed it more advantageous to each of them that the sale should be advertised in a newspaper published in Fulton County, and also that the sale should be conducted in that county. The parties were equally interested in these matters, and had the absolute power under the existing law to determine such questions for themselves. They were free to say that the sale should be advertised in a newspaper published in Fulton County and also that the sale should be made in that county. If the subsequent statute should be so applied as to require a different mode of procedure, the property would be sold under conditions not assented to by the parties, but substituted by the legislature in place of the contract deliberately made by them. The legislature could not thus make a new and different contract concerning the property rights of these parties. The conclusion we have reached as to section 2 is demanded by a proper construction of the constitutional law, and is at the same time supported, we think, by the greater weight of authority, although there may be some decisions to the contrary. The following decisions, which have been cited in the present case, even if contra, do not persuade us to a different view: Schwertner v. Provident Mutual Asso., 17 Ariz. 93 (148 Pac. 910); Brotherhood of American Yeomen v. Manz, 23 Ariz. 610 (206 Pac. 403); Davis v. First National Bank, 26 Ariz. 621 (229 Pac. 391); Brown v. Hall, 32 S. D. 225 (142 N. W. 854); State ex rel. N. W. M. Ins. Co. v. Circuit Court, 61 S. D. 356 (249 N. W. 631).

■ Section 1 of the act in question not only incumbers the stipulated remedy, but directly affects a substantive right granted by the security deed. "The remedy subsisting in a State when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void." Edwards v. Kearzey, 96 U. S. 595 (24 L. ed. 793, 799). In Louisiana v. New Orleans, 102 U. S. 203 (26 L. ed. 132), it

was said: "The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced,— by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened. . . Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition." At the time of the execution of the instant security deed, it was the law of Georgia that the holder might exercise the power of sale contained therein, unimpeded by any such conditions as were later embodied in section 1 of the act of March 28, 1935; and that if on a fair sale the property did not bring an amount sufficient to satisfy the debt, the grantor would be liable for the remainder and subject to a judgment therefor in a proper action. *National Mortgage Cor.* v. *Bullard,* 178 *Ga.* 451 (2), 455 (173 S. E. 401). The legislature attempted, however, to change all of this by providing that "no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within thirty days after such sale, report the sale to the judge of the superior court of the county in which the land lies, for confirmation and approval, and obtain an order of confirmation and approval thereon." The act further provides: "The court shall require evidence to show the true market value of the property sold under such powers, and shall not confirm the sale unless he is satisfied the property so sold brought its true market value on such foreclosure sale. The court shall direct notice of the hearing to be given the debtor at least five days prior thereto, and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may for good cause shown order a resale of the property." The provisions of section 1, if applied to the security deed under consideration, would undoubtedly take away a substantial right vested by that instrument, and therefore would materially impair and lessen the value of such contract. This part of the act can not be applied to such pre-existing contract without a clear infringement of both the State and Federal constitutions. This conclusion finds direct support in the following decisions dealing with the matter of deficiency judgments under similar legislation:

Barnitz *v.* Beverly, 163 U. S. 118 (16 Sup. Ct. 1042, 41 L. ed. 93) ; Vanderbilt *v.* Brunton Piano Co., 111 N. J. L. 596 (169 Atl. 177, 89 A. L. R. 1080) ; Adams *v.* Spillyards, 187 Ark. 641 (61 S. W. (2d) 686, 86 A. L. R. 1493) ; Langever *v.* Miller (Tex. Civ. App.), 73 S. W. (2d) 634, 96 A. L. R. 836. See also the following cases bearing generally upon the constitutional question involved: *Waters* v. *Dixie Lumber & Mfg. Co.,* 106 *Ga.* 592 (32 S. E. 636, 71 Am. St. R. 281) ; *Jones* v. *Oemler,* 110 *Ga.* 202 (4) (35 S. E. 375) ; *Virginia-Carolina Chemical Co.* v. *Floyd,* 159 *Ga.* 311 (125 S. E. 709) ; *Morris* v. *Interstate Bond Co.,* 180 *Ga.* 689 (180 S. E. 819) ; Worthen Co. *v.* Kavanaugh, 295 U. S. 56 (55 Sup. Ct. 555, 79 L. ed. 638) ; Louisville Joint Stock Land Bank *v.* Radford, 295 U. S. 495 (55 Sup. Ct. 854, 97 A. L. R. 1106, 79 L. ed. 920) ; Phinney *v.* Phinney, 81 Maine, 450 (17 Atl. 405, 4 L. R. A. 348, 10 Am. St. R. 266) ; Second Ward Bank *v.* Schranck, 97 Wis. 250 (73 N. W. 31, 39 L. R. A. 569) ; In re Fidelity State Bank, 35 Idaho, 797 (209 Pac. 449, 31 A. L. R. 781) ; Travelers Ins. Co. *v.* Marshall (Tex.), 76 S. W. (2d) 1007, 96 A. L. R. 802.

The act of March 28, 1935, purports to be a permanent statute, and contains no reference to the financial depression. Whether emergency legislation to be operative during a limited period might be sustained as constitutional in this State is a question which we do not decide at this time, since the act under consideration, judged by its own terms, was not intended as a statute of that character. Cases dealing with such legislation are not in point in the solution of the case in hand. Cf. Home Building & Loan Asso. *v.* Blaisdell, 290 U. S. 398 (54 Sup. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481) ; Durham Realty Cor. *v.* LaFetra, 230 N. Y. 429 (130 N. E. 601, 16 A. L. R. 152) ; Block *v.* Hirsh, 256 U. S. 135 (41 Sup. Ct. 458, 65 L. ed. 865, 16 A. L. R. 165) ; In re People, 264 N. Y. 69 (190 N. E. 153, 96 A. L. R. 297). Nor do we now express any opinion on the question of whether the act which has been challenged in this case may be applied as a valid law to contracts executed after its passage.

This court will not declare an act of the legislature unconstitutional unless the conflict between the act and the constitution is clearly manifest. If any reasonable construction can be placed upon the statute which will preserve its constitutionality, it is the duty of the courts to adopt such construction and refuse to declare

the act invalid. *Cooper* v. *Rollins,* 152 *Ga.* 588 (110 S. E. 726); *Bennett* v. *Wheatley,* 154 *Ga.* 591 (115 S. E. 83). But where, as in the present case, the conflict is plainly apparent, the constitution of this State, in express terms, places upon the courts the duty and responsibility of so holding; for it is provided in that instrument that "Legislative acts in violation of this constitution, or the constitution of the United States are void, and the judiciary shall so declare them." Code of 1933, § 2-402. No part of the act of March 28, 1935, could be constitutionally applied to the pre-existing contract here in question. The court erred in granting an injunction.

*Judgment reversed. All the Justices concur, except Russell, C. J., absent because of illness.*