## 33116. BARTON *v.* THE STATE.

Decided June 20, 1950.

*Harris, Chance & McCracken,* for plaintiff in error.
*George Hains, Solicitor-General, Randall Evans Jr.,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Ground 1 of the amended motion for a new trial complains of the admission into evidence of certain testimony of a psychiatrist, a witness for the defendant, as follows: "He didn't say that he had attacked Mrs. Tommie Jeremiah in Thomson and tried to rape her and commit a sexual perversion on her in May or June of last year." This was in answer to a question on cross-examination as to whether the defendant had told the psychiatrist during his examination of him of the alleged rape and perversion on a date which would have been during the month in which the indictment alleged that the crime for which the defendant was on trial was committed. Counsel for the defendant objected to this testimony on the ground that it put the witness's character in issue, was irrelevant and prejudicial. Quoting from Wigmore on Evidence, sec. 979 (1-b, 2) he contends that such a question is objectionable under the doctrine of Unfair Surprise, in that it would have been impossible for the defendant, assuming the charge contained in counsel's question to have been false, to have any way of anticipating such a charge or defending himself against it, and that a witness cannot be expected to come to court prepared to disprove every act which might be alleged against him during the course of his lifetime. Evidence tending to prove crimes other than that with which the defendant is charged is generally inadmissible. *Wright* v. *State,* 76 *Ga. App.* 483 (46 S. E. 2d, 516); *Gossett* v. *State,* 203 *Ga.* 692 (48 S. E. 2d, 71). It follows that a question directed at the witness for the purpose of obtaining such information is likewise generally improper. However, where the defendant calls an expert wit-

ness in his behalf for the purpose of showing that it is the opinion of the expert, based entirely on his examination of the defendant, that he is not a homosexual, it then becomes proper material for cross-examination as to what facts the medical expert garnered during the course of his examination which constituted the foundation upon which the opinion was made. In *Wyatt* v. *State*, 206 *Ga.* 613 (57 S. E. 2d, 914), it was held proper, on cross-examination of a medical expert as to the defendant's alleged insanity at the time of the homicide, to allow the physician to testify as to what the accused has said concerning a previous homicide, the court holding that a defendant who relies upon the benefit of a witness's opinion may not withhold from the jury the facts on which such opinion is based, even though such facts tend to discredit his character, and even though his character has not been put in issue. There is a broad distinction between this type of cross-examination and that condemned by Wigmore, which has no other purpose than to discredit the defendant by intimation and allusion. The question and answer in this instance have the legitimate purpose of determining the scope of the expert's examination. It may further be noted that the answer, which denied that the defendant had made a statement concerning a previous crime, was favorable to the defendant. Ground 1 of the amended motion for a new trial is therefore without merit.

■ The second ground of the amended motion excepts to the procedure of the solicitor general on putting the jurors upon their voir dire as a panel and propounding the oath and questions to them in this manner instead of individually. Code § 59-806 provides in part as follows: "On trials for felonies any juror may be put upon *his* voir dire and the following questions· shall be propounded to *him* . . ." (Emphasis ours.) The proper practice is, of· course, to follow the procedure above outlined and put each juror individually upon his voir dire. Three cases are cited by counsel for the defendant upon this point. In *Roberts* v. *State*, 65 *Ga.* 431, the court commended the practice of administering the preliminary oath to the twelve jurors at once, as a saving of time, and also held that there was no error in the practice of postponing swearing in the jurors until a panel of twelve had been selected. As to the statutory questions, how-

ever, it was held in *Williams* v. *State*, 60 *Ga.* 367 (27 Am. R. 412), and *Wilkerson* v. *State*, 74 *Ga.* 398, that to fail to put each juror upon his voir dire individually was error prejudicial to the defendant in that it deprived him of his statutory right to consider the prospective jurors one at a time in order that he might "wrestle with them single-handed." Examination of the original records of these cases reveals, although it is not so stated in the opinion, that in each case counsel for the defendant objected to procedure at the time and that his objection was overruled by the court. There was in these cases, therefore, no question of a waiver by the defendant because of failure to interpose timely objections. In *Wilson* v. *State*, 176 *Ga.* 198(1) (167 S. E. 111) it is held that, although it is error to examine on their voir dire two or more jurors together, nevertheless the right to complain is waived when no objection is made to this procedure at the time, and it is too late after an adverse verdict has been reached to do so for the first time. The record in this case affirmatively shows that no objection was made at the time by the defendant or his counsel; consequently, although the procedure was unauthorized, the defendant by his silence waived his right to complain thereof. This ground of the amended motion is therefore without merit.

■ Ground 4 of the amended motion for a new trial complains of the following excerpt from the charge of the court: "Now, gentlemen of the jury, if you find the defendant guilty, the form of your verdict would be, 'We, the jury, find the defendant guilty', in which event life imprisonment would be his punishment." It is contended that this charge is erroneous in that the penalty for sodomy has been changed from life imprisonment to a period of not less than one nor more than ten years (Ga. L. 1949, p. 276).

It is to be observed that the crime was committed on June 30, 1948, and that the law reducing the punishment was enacted on February 8, 1949. The new law contained the usual repealing clause that all laws in conflict herewith are hereby repealed. This of course refers to Code § 26-5902 as it appears in the Georgia Code of 1933. It has no reference, even by implication, to Code § 26-103, which provides as follows: "All crimes shall be prosecuted and punished under the laws in force

at the time. of the commission thereof, notwithstanding the repeal of such laws before such trial takes place." It is the settled law of this State that where a crime is committed on a certain date, the penalty which attached to the crime on that date is the penalty exacted by our law. The application of a subsequent reduction of the penalty only to cases arising after the enactment thereof does not raise the question of *ex post facto* legislation, because it is generally held that the *ex post facto* laws prohibited by the State and Federal Constitutions refer only to laws which aggravate the crime, increase the punishment, or allow conviction on a less or different weight of evidence, and not to those which reduce or mollify the penalty. See Black's Law Dictionary, *"ex post facto law."* However, making the lesser penalty applicable to offenses committed prior to the enactment of the legislation is contrary to the judicial interpretation of the courts of this State under which the penalty for a criminal offense relates only to those offenses committed when and after such legislation becomes effective. See *Meyers* v. *Whittle,* 171 *Ga.* 509 (4) (156 S. E. 120); *Jordan* v. *State,* 38 *Ga.* 585 (1); *Reynolds* v. *State,* 181 *Ga.* 547 (3) (182 S. E. 917); *Pennington* v. *Moore,* 179 *Ga.* 889 (177 S. E. 705); *Draper* v. *State,* 6 *Ga. App.* 12 (64 S. E. 117); United States *v.* Chambers, 291 U. S. 217 (59 Sup. Ct. 434, 78 L. ed. 763, 89 A.L.R. 1510); Massey *v.* U. S., 291 U. S. 608 (54 Sup. Ct. 532, 70 L. ed, 1019).

It was mandatory for the trial court to impose the sentence provided for by the law in force at the time of the commission of the crime. This court, being a court for the correction of errors of law only, is without power to reverse the case for a new trial on a ground which discloses that the trial judge performed his plain duty as provided by law. While the courts cannot apply the new law reducing the sentence for this offense, the fact that the General Assembly has seen fit to reduce the punishment for this offense is evidence that the punishment was formerly too severe, and this is a proper matter for the consideration of the Pardon and Parole Board at such time as an application may be filed on behalf of the defendant for parole. The case cannot be reversed for the reasons set forth in this ground of the amended motion for a new trial.

■ The third ground of the amended motion urges that the trial court erred in failing to charge the law of circumstantial evidence without a request "in that the entire case rested on circumstantial evidence and there was no direct testimony to the effect that the crime of sodomy was committed as alleged in the indictment." The record reveals that the State's evidence consisted of the testimony of Edgar Lee Luckey, the victim of the offense, and of his father. The testimony of Edgar Lee Luckey as to the circumstances under which the offense upon him was committed constituted direct evidence and, considered either alone or in connection with all the evidence in the case, was sufficient to authorize the jury to find the defendant guilty. The third special ground as well as the general grounds of the motion for a new trial are therefore without merit.

The trial court did not err in overruling the motion for a new trial as amended.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*